CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 03, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| W.O., a minor, by his father and next friend, SEAN O'BRIEN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | |

Case No. 7:24-cv-730

By:    Michael F. Urbanski
Senior United States District Judge

### MEMORANDUM OPINION

On July 20, 2023, W.O., then nine years old, and his family visited the John Kerr Dam and Reservoir in Boydton, Virginia. Compl., ECF No. 1, ¶ 4. W.O. fell while swinging on a playground swing set and was injured. Id. ¶¶ 16-17. W.O., by and through his father, filed a complaint on October 22, 2024, under the Federal Tort Claims Act ("FTCA"), alleging that the United States, which maintains John Kerr Dam and Reservoir through the United States Army Corps of Engineers ("USACE"), breached its duty of care owed to park visitors by negligently inspecting and failing to repair the swing set. Id. ¶ 15. Specifically, W.O. alleges that a USACE employee inspected the swing set in April 2023, three months before W.O.'s accident, and completed a checklist indicating that the playground equipment was entirely safe and "compliant," despite evident problems with the swing set's S-hook. Id. ¶ 9.

The United States moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim on January 13, 2025. ECF No. 8. The United States principally contends that the United States had a contract with an independent contractor, FedServ, Inc. ("FedServ"), for the maintenance of John Kerr Dam and Reservoir, including the swing set,

and that therefore, both the independent contractor and discretionary function exceptions to the FTCA's waiver of sovereign immunity apply. However, because neither exception applies to the negligence W.O. alleges based on the affirmative acts of an employee of the United States during the inspection in April 2023, the motion to dismiss for lack of subject matter jurisdiction must be **DENIED in part** as to W.O.'s claims centering on that inspection **and GRANTED in part** as to W.O.'s claims based on USACE's generalized inaction. The motion to dismiss for failure to state a claim must be **DENIED** because the complaint plausibly alleges that USACE's negligence during the inspection in April 2023 caused W.O.'s accident.

## BACKGROUND

USACE installed the swing set at issue in this case in 1990 as part of a playground at John Kerr Dam and Reservoir. Compl., ECF No. 1, ¶¶ 4, 5, 6. In April 2023, three months before W.O.'s accident, a USACE employee, Alyson Parker, who served as the site's collateral duty safety officer, inspected the swing set as part of the "opening" of the campground for the season ("April 2023 Parker Inspection"). Id. ¶ 9.[1] Parker completed this inspection pursuant to a standard operating procedure, "SOP for Playground Safety at Wilmington District Lakes," which suggests that the collateral duty safety officer should be trained in playground inspection via the Certified Playground Safety Inspector and, once trained, "should assist with playground inspections on a regular basis." See SOP for Playground Safety at Wilmington District Lakes, ECF No. 11-2. During her inspection, Parker completed a "Playground Inspection Checklist," on which Parker deemed the equipment "compliant"

---

[1] The Playground Inspection Checklist, which was attached to W.O.'s brief in opposition to the motion to dismiss, indicates that Parker's inspection was an "opening" inspection, as opposed to a "monthly" or "random" inspection. ECF No. 10-1.

when inspected for "[v]isible [c]racks, [b]ending, [w]arping, [r]usting, . . . [b]reakage of [a]ny [c]omponent, . . . [d]eformation of [o]pen [h]ooks, [s]hackles, [r]ings, [l]inks, etc.[,]" or a "[w]orn [s]wing [h]anger and [c]hains." Compl., ECF No. 1, ¶ 9; see also Playground Inspection Checklist, ECF No. 10-1.

USACE contracts with FedServ to "procure for the Government complete and efficient maintenance and repairs on the John H. Kerr Project." FedServ Contract, ECF No. 11-1 at 24 ¶ TP-1.1. Specifically, "The Contractor shall provide inspections, maintain and repair up to ten (10) playground areas throughout the project," with pertinent work to include "repairing or removing from service damaged playground equipment, park benches, borders or wooden timbers" and "inspect[ing] playground equipment from top to bottom for wear, structural integrity, and parts replacement." Id. at 60 ¶ TP-5.9. An affidavit attached to W.O.'s opposition to the motion to dismiss states:

> FedServ, Inc. conducted biweekly inspections of the Campground and playground equipment therein. FedServ, Inc. employees completed an inspection of the swing set at the Campground on 11 July, 2023 and submitted an inspection report documenting their findings. The inspection report contained no notes of needed inspection, indicating that on the date of their inspection they observed no defect in or needed maintenance of examined playground equipment.

Declaration of Tasha Alexander, ECF No. 10-3, ¶ 7. FedServ's July 11, 2023, inspection occurred nine days prior to W.O.'s accident.

On July 20, 2023, W.O. was injured while "using the swing set in an appropriate and foreseeable manner." Compl., ECF No. 1, ¶ 15. "While swinging forward, the swing's triangular seat bracket disengaged from the support chain because the metal S-hook was worn, deformed and open." Id. W.O. fell and suffered injuries requiring "emergency and subsequent

3

medical treatment, including immobilization, emergency surgery on or about July 27, 2023 to repair a displaced fracture of his right middle finger, followed by casting and physical therapy." Id. ¶¶ 16-17. USACE's subsequent investigation revealed that "the swing set had old, worn, defective equipment including a worn S-hook fastener, the metal of which had become visibly thin at its natural friction point from swinging." Id. ¶ 19. W.O. alleges that this "visibl[e]" deformity of the S-hook would have been apparent to any inspector long before W.O.'s accident, including at the time of the April 2023 Parker Inspection, had the inspector exercised ordinary care in examining the swing set. Id. ¶ 25 a.

W.O., through his father, filed a timely SF95 notice of claim to the United States Army, which was denied on April 25, 2024. Id. ¶ 21. W.O., through his father, then filed the instant complaint under the FTCA on October 22, 2024. Id. The complaint alleges that during the April 2023 Parker Inspection, a USACE employee overlooked "patent defects in violation of duties of reasonable care." Id. ¶ 25 a. The complaint further alleges that this constituted negligence per se based on various playground safety standards that USACE has allegedly adopted. Id. ¶ 25 b.[2] Additionally, the complaint alleges that USACE "failed to conduct a timely assessment of the age and obsolescence of the components [of the swing set]," id. ¶ 25 c, that "USACE failed to conduct ongoing, proper, and regular inspections through its own employees on each patrol in 2023," id. ¶ 25 d, that "USACE failed to timely address years of foreseeable, progressive, and visible wear and tear at the friction point between the S-hook and the seat bracket," id. ¶ 25 e, and that "USACE's park rangers, CE Techs, and other staff

---

[2] For example, the complaint alleges that USACE adopted the "U.S. Consumer Playground Safety Commission's Public Playground Safety Handbook." Compl., ECF No. 1, ¶ 13. Evidence is needed to shed further light on this allegation.

members failed to inspect the swing set properly on their patrols," id. ¶ 25 f. W.O. claims that

his injuries were a direct and proximate result of these breaches. Id. ¶ 26.

## STANDARD OF REVIEW

a. **Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to

dismiss for lack of subject matter jurisdiction. "Generally, a court must resolve jurisdictional

issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot

proceed at all in any cause.'" Whitaker v. Monroe Staffing Servs., LLC, 42 F.4th 200, 206 (4th

Cir. 2022) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)). The

party asserting federal jurisdiction bears the burden to prove that subject matter jurisdiction

exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768

(4th Cir. 1991); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). "Subject-matter

jurisdiction may be challenged as a facial or factual attack." Hannah v. United States, No. 7:20-

cv-662, 2022 WL 135314, at *2 (W.D. Va. Jan. 13, 2022) (citing Hutton v. Nat'l Bd. of Exam'rs

in Optometry, Inc., 892 F.3d 613, 621 n.7 (4th Cir. 2018)). In a facial challenge, a defendant

may contend "that a complaint simply fails to allege facts upon which subject matter

jurisdiction can be based." Wells v. Artrip, No. 1:16-cv-041, 2017 WL 1788385, at *2 (W.D.

Va. May 3, 2017). In a factual challenge, a defendant may argue "that the jurisdictional

allegations of the complaint [are] not true." Id.

When a defendant challenges the factual basis for subject matter jurisdiction, "[a] trial

court may then go beyond the allegations of the complaint [to] determine if there are facts to

support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quotations omitted). "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Id. A district court should grant a Rule 12(b)(1) motion to dismiss on the basis of a factual challenge "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### b. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss for Failure to State a Claim

A defendant may also move to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); see also Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to

relief that is plausible on its face.'") (quoting <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis omitted)).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. <u>Wikimedia Found. v. Nat'l Sec. Agency</u>, 857 F.3d 193, 208 (4th Cir. 2017). Unlike in evaluating a factual challenge to subject matter jurisdiction under Rule 12(b)(1), courts "generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint" under Rule 12(b)(6). <u>Anand v. Ocwen Loan Servicing, LLC</u>, 754 F.3d 195, 198 (4th Cir. 2014).

## DISCUSSION

### a. Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under the doctrine of sovereign immunity, the United States is immune from suits seeking monetary damages, unless it consents to being sued through an act of Congress waiving immunity. <u>Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz</u>, 601 U.S. 42, 48 (2024). Absent such a waiver of sovereign immunity, federal courts lack subject matter jurisdiction to hear claims against the United States. <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Because waiver of sovereign immunity is jurisdictional, the party invoking federal jurisdiction, here, W.O., bears the burden of establishing that the United States has waived its immunity. <u>See Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Welch v. United States</u>, 409 F.3d 646, 651 (4th Cir. 2005).

In determining whether the burden to establish waiver has been satisfied, the court examines the text of the statute relied upon. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996). The court must also examine whether the claims at issue fit within the scope of the statute's waiver of sovereign immunity. The Supreme Court has explained, "[W]aiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Id.

The FTCA provides a limited waiver of sovereign immunity. The FTCA states:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .

28 U.S.C. § 1346(b)(1). The United States has thus consented to suit under the FTCA, permitting judicial review of FTCA claims based on the acts or omission of government employees. See Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995).

However, the scope of that consent is limited by the text. The text of the FTCA is limited to torts committed by "employee[s] of the Government while acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). The statute excludes torts committed by independent contractors. 28 U.S.C. § 2671 (defining federal agencies in 28 U.S.C. § 1346(b) to "not include any contractor with the United States"); see also Williams, 50 F.3d at 305 ("By its express terms, the FTCA does not provide for liability of the United States for the acts or omissions of independent contractors."). "Because the United States is not liable for the acts

8

or omissions of independent contractors, sovereign immunity has not been waived; and the doctrine therefore operates to bar suits against the United States." Id.

The text of the FTCA also precludes "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Because FTCA liability is not available where an agency or employee of the United States performs a discretionary function, the FTCA does not constitute a waiver of sovereign immunity for tort claims against the United States based on the performance or nonperformance of a discretionary function, and such a "suit must be dismissed for want of subject matter jurisdiction under Rule 12(b)(1)." Williams, 50 F.3d at 305.

The United States contends that both the independent contractor and discretionary function exceptions to the FTCA's waiver of sovereign immunity apply in this case.

1. **The independent contractor exception does not apply to W.O.'s claims based on the April 2023 Parker Inspection.**

The United States argues that USACE has contracted with FedServ to provide for the maintenance of the John Kerr Dam and Reservoir, including its playgrounds, and that because FedServ is an independent contractor tasked with playground inspection and repair, the independent contractor exception applies to any claim based on negligent playground inspection or repair at the John Kerr Dam and Reservoir. Mem. Supp. Mot. Dismiss, ECF No. 9 at 6-9.

It is true enough that FedServ is an independent contractor. The test for determining whether an entity is an independent contractor under the FTCA examines "whether the government exercises day-to-day control over the performance of the work under the contract." Berkman v. United States, 957 F.2d 108, 112 (4th Cir. 1992); see also Logue v. United States, 412 U.S. 521, 527 (1973) (considering whether the United States has the "authority . . . to control the physical conduct of the contractor in performance of the contract"). Here, the government's contract with FedServ states, "The Government shall neither supervise Contractor employees nor control the method by which the Contractor performs the required tasks." FedServ Contract, ECF No. 11-1 at 25 ¶ Non-Personal Services; see also Williams, 50 F.3d at 305 ("Material in determining whether [an FTCA tortfeasor] is an independent contractor are the terms of the contract defining the relationship between it and the United States."). This contract language demonstrates that FedServ is an independent contractor, and, accordingly, this court would lack jurisdiction to hear claims against the United States based on FedServ's acts or omissions.

However, W.O.'s claims do not purport to be based on FedServ's acts or omissions. The complaint principally alleges that "USACE negligently inspected the swing set through its own employee" during the April 2023 Parker Inspection, Compl., ECF No. 1, ¶ 25 a, and that this inspection was negligent per se, id. ¶ 25 b. The complaint also generally alleges that USACE failed to assess the age of the swing set, failed to conduct "ongoing" inspections, failed to address years of foreseeable wear, and failed to inspect the swing set when other USACE staff members, like park rangers, were patrolling the area. Id. ¶¶ c-f. The complaint's focus is thus on USACE, and the complaint provides plausible grounds for attributing

responsibility for W.O.'s accident to USACE, most significantly, by alleging that a USACE employee inspected the swing set in question just three months prior to W.O.'s accident.

Nevertheless, in evaluating this Rule 12(b)(1) factual challenge to subject matter jurisdiction, the court must look beyond the complaint to the evidence demonstrating that FedServ was also, if not primarily, responsible for playground inspection and maintenance at the John Kerr Dam and Reservoir. Kerns, 585 F.3d at 192.[3] Specifically, the court must consider the "complete" delegation of playground inspection and maintenance duties indicated by the FedServ contract, FedServ Contract, ECF No. 11-1 at 24 ¶ TP-1.1, and the fact that FedServ in fact did inspect the playground in question after the April 2023 Parker Inspection—just nine days prior to W.O.'s accident, Declaration of Tasha Alexander, ECF No. 10-3, ¶¶ 6-7. These facts provide plausible grounds for attributing at least partial responsibility for W.O.'s accident to FedServ.

How then should the court proceed under the independent contractor exception where there are plausible grounds for attributing responsibility for an accident to the United States but also to an independent contractor? The Supreme Court has concluded that where government employees act alongside independent contractors, government employees are not absolved of FTCA liability for their own distinct acts of negligence. Logue v. United States, 412 U.S. 521, 532-33 (1973). In Logue v. United States, the plaintiffs claimed that their son's death by suicide while confined as a federal prisoner in a county jail was caused by the

---

[3] The court notes that the complaint omitted any mention of FedServ. Compl., ECF No. 1. The existence of the FedServ contract was brought to the court's attention in the government's memorandum in support of its motion to dismiss, ECF No. 9, and once the issue was raised, W.O. confirmed that FedServ plays a significant role in playground inspection and repair at the John Kerr Dam and Reservoir, Declaration of Tasha Alexander, ECF No. 10-3, ¶¶ 6-7.

negligence of county sheriff's employees, who were contractors with the United States, but also by the negligence of a deputy United States marshal, who was an employee of the United States. 412 U.S. at 523-25. Both the county sheriff's employees and the deputy marshal were allegedly negligent because both the county sheriff's employees and the deputy marshal knew of the prisoner's "suicidal tendencies" but failed to monitor him. Id. The Court found that the county sheriff's employees were independent contractors and that therefore the United States could not be liable for the negligence of the county sheriff's employees, but the Court "disagree[d] with the [lower court's] implicit determination that such a conclusion ends the case." Id. at 532. The Court remanded for the lower court to determine whether the deputy marshal was negligent. Id. at 533. Here too, the conclusion that the independent contractor exception precludes jurisdiction over a claim based on FedServ's negligence does not "end[] the case;" the court must consider whether USACE was also negligent.

Similarly, in Berkman v. United States, the Fourth Circuit explained, "The fact that an independent contractor may have been responsible for [the plaintiff's injury], . . . cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." 957 F.2d at 114. Specifically, in Berkman, the plaintiff slipped and fell due to hydraulic fluid leaking from the door to a mobile lounge at Dulles Airport. Id. at 110. Although the Federal Aviation Agency ("FAA") contracted with an independent contractor for custodial services at Dulles, including "'floor cleaning and maintenance,'" id. at 111, the FAA itself had "a duty to 'clean, maintain, inspect, and keep . . . shuttle buses and disembarkation lounges attendant thereto in good order,'" id. at 114. The plaintiff alleged that the FAA "'failed to use reasonable care while

12

lubricating the doors' and failed to inspect to see that slippery substances were not left on the floor." Id. The court reasoned, "While it may be true that [the independent contractor] should have removed the spill before Berkman slipped, it may also be true that negligent inspection and maintenance of the door, as well as the failure to close the gate to passenger use prior to Berkman's fall, constituted negligence on the FAA's part and was at least a partial cause of the accident." Id. Here too, while it may be the case that FedServ should have observed and rectified any problem with the swing set's S-hook, particularly during the July 11, 2023 inspection, it may also be true that USACE "was at least a partial cause of the accident," particularly during the April 2023 Parker Inspection. Id.

Thus, under Logue and Berkman, the independent contractor exception does not bar review of W.O.'s claims because, although FedServ's negligence may be in part to blame for W.O.'s injury, USACE's own actions may also be partial causes of the swing set's failure. Most notably, the allegedly negligent April 2023 Parker Inspection falls squarely within the FTCA's waiver of sovereign immunity because that inspection was conducted by an "employee of the Government while acting within the scope of [her] office or employment." 28 U.S.C. § 1346(b)(1).

### 2. The discretionary function exception does not apply to W.O.'s claims based on the April 2023 Parker Inspection.

The United States next argues that the discretionary function exception applies because any action USACE took to itself inspect and maintain playgrounds at the John Kerr Dam and Reservoir was discretionary in light of USACE's overarching policy decision to assign far-

13

ranging playground inspection and maintenance duties to an independent contractor. Mem. Supp. Mot. Dismiss, ECF No. 9 at 9-14.

The discretionary function exception applies when two factors indicate that a claim is based on the government's performance or nonperformance of a discretionary function: (1) "the challenged governmental conduct involves an element of judgment or choice" because no "statute, regulation, or policy prescribes a specific course of action" and (2) "the judgment was one that the exception was designed to protect, namely a judgment based on considerations of public policy." Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015); see also Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). For the exception to apply, both prongs must support the conclusion that the challenged governmental conduct was discretionary. Rich, 811 F.3d at 144.

As to the first prong, much of USACE's conduct regarding playground maintenance and inspection appears discretionary because, although USACE "has developed and implemented a Standard Operating Procedure (SOP) . . . applicable to all playground equipment across the District's area of responsibility," Declaration of Tasha Alexander, ECF No. 10-3, ¶ 5, that SOP contains permissive language. "[T]here may be circumstances in which internal operating procedures go beyond mere guidance, removing any discretion from the task at hand and articulating a mandatory directive that must be followed at the risk of incurring liability." Sanders v. United States, 937 F.3d 316, 329 (4th Cir. 2019). However, "internal operating procedures, guidance manuals, and the like do not automatically give rise to tort liability." Id. Courts thus look for "unambiguously mandatory and nondiscretionary language," id. at 329-30, such as the words "'will,'" id., and "'shall,'" Walen

14

v. United States, 246 F. Supp. 3d 449, 458-59 (D.D.C. 2017). Where binding language is absent, courts find that no mandatory directive exists, supporting application of the discretionary function exception to protect the United States' sovereign immunity. Indem. Ins. Co. of N. Am. v. United States, 569 F.3d 175, 180 (4th Cir. 2009) (applying the discretionary function exception where a manual set forth only a "recommended testing methodology").

Here, USACE's SOP does not contain "will" or "shall" language, leaving USACE discretion as to what its role should be in playground safety. For example, the SOP recommends, "An inspection of all playgrounds and modified natural play areas should be completed when a [park] opens for the year and monthly when [parks] are open to maintain the standard of care using an inspection checklist." SOP for Playground Safety at Wilmington District Lakes, ECF No. 11-2 (emphasis added). The SOP thus indicates that the April 2023 Parker Inspection and Parker's decision to complete the inspection based on the Playground Inspection Checklist were discretionary. Playground Inspection Checklist, ECF No. 10-1. The provisions in the SOP pertaining to Parker as the collateral duty safety officer are also mere recommendations as to what the collateral duty safety officer "should" do. The SOP suggests that the "collateral duty safety officer at each project or another designated staff member should attend the Certified Playground Safety Inspector (CPSI)" and that "[a]fter completion of CPSI training, individuals should assist with playground inspections on a regular basis." Id. (emphasis added). Thus, USACE was not required to initiate playground inspections, including an opening inspection in April 2023, and Parker, even in her role as collateral duty safety officer, was not required to be trained through CPSI, to regularly assist with playground inspections, or even to complete the Playground Inspection Checklist.

By contrast, the FedServ contract is replete with mandatory language. For example, the FedServ contract instructs, "The Contractor <u>shall</u> provide inspections, maintain and repair up to ten (10) playground areas throughout the project," with work to include "inspect[ing] playground equipment from top to bottom for wear, structural integrity, and parts replacement." FedServ Contract, ECF No. 11-1 at 60 ¶ TP-5.9 (emphasis added). The fact that the relevant mandatory directives in the sphere of playground safety were those assigned to FedServ may explain why USACE would reserve discretion for itself as to whether to conduct playground safety tasks.

Thus, the first prong of the discretionary function analysis supports the conclusion that the court lacks jurisdiction over W.O.'s claims based on USACE's discretionary decisions as to whether its own employees should inspect and maintain playgrounds. The first prong supports granting the motion to dismiss in part as to the complaint's broad allegations charging USACE with inaction in failing timely to assess the obsolescence of the swing set components, Compl., ECF No. 1, ¶ 25 c, to conduct ongoing inspections through its own employees, <u>id.</u> ¶ 25 d, to address years of foreseeable wear, <u>id.</u> ¶ 25 e, and to instruct park rangers and other staff to inspect playgrounds during their patrols, <u>id.</u> ¶ 25 f. However, while the SOP leaves much to USACE's discretion, particularly as to whether to initiate inspections and repairs, a different document became pertinent once USACE made the discretionary decision to nevertheless conduct the April 2023 Parker Inspection: the Playground Inspection Checklist.

Applying the first prong of the discretionary function analysis to the Playground Inspection Checklist indicates that, once an inspection pursuant to the Checklist is initiated, the Checklist leaves little room for discretion. Admittedly, the Checklist does not use "will" or

"shall" language because it does not include written instructions at all. Playground Inspection Checklist, ECF No. 10-1. The Checklist instead imposes mandatory inspection procedures through its structure. Id. The Checklist enumerates in one column indicators of playground condition for the inspector to evaluate, such as "[w]orn [s]wing [h]anger and [c]hains" or "[d]eformation of [o]pen [h]ooks," and provides another column where the inspector is to record their findings via a rating code on a scale from one, which means the "[c]ondition should be corrected immediately or component/playground closed," to five, which means the "[e]xisting condition is compliant." Id. The columns themselves "prescribe[] a specific course of action:" the inspector must truthfully ascertain then record whether each listed playground component is in safe condition. Rich, 811 F.3d at 144.

W.O. alleges that Parker negligently failed to follow this designated course of action when she recorded ratings of five across the board on the Playground Inspection Checklist in April 2023. Playground Inspection Checklist, ECF No. 10-1. W.O. argues that, had Parker exercised ordinary care in complying with the investigative steps set out in the Checklist, Parker would have examined and noted the deformed S-hook that allegedly caused W.O.'s injury. Compl., ECF No. 1, ¶¶ 25 a-b. Because the Checklist does not leave an inspector discretion to decide to ignore apparent defects in the playground components listed for inspection, the first prong of the discretionary function analysis indicates that the exception does not apply to W.O.'s claims of negligence and negligence per se as to the April 2023 Parker Inspection. Id.

The second prong of the discretionary function analysis confirms that while W.O.'s claims based on USACE's inaction fall within the discretionary function exception, W.O.'s

claims based on the April 2023 Parker Inspection are not jurisdictionally barred. The second prong considers whether "the judgment was one that the exception was designed to protect, namely a judgment based on considerations of public policy." Rich, 811 F.3d at 144. Here, USACE's decision to assign mandatory playground safety functions to FedServ, leaving for itself only discretionary tasks, is plainly shielded by the discretionary function exception. As the Fourth Circuit has explained, "The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy," such as "concerns of expense, administration, payment, access to the Premises, and a veritable plethora of factors." Williams, 50 F.3d at 310; see also Duff v. United States, 999 F.2d 1280, 1281 (8th Cir. 1993); Feyers v. United States, 749 F.2d 1222, 1227 (6th Cir. 1984), cert. denied, 471 U.S. 1125 (1985).

Although W.O.'s complaint does not directly challenge USACE's decision to hire FedServ, the complaint's allegations based on USACE's inaction effectively challenge the natural consequences of that policy judgment. In Williams v. United States, the Fourth Circuit considered similar claims challenging the inaction of government employees where the relevant safety tasks were contractually delegated to an independent contractor. 50 F.3d at 307. In Williams, the court first held that the independent contractor exception prevented the plaintiff from basing a claim on the negligence of independent contractor employees and that the discretionary function exception protected the government's decision to hire the independent contractor to handle custodial duties in a government office building. Id. at 307-09. The court then considered the plaintiff's contention that, regardless, "agents or employees

18

of the United States," such as the building's security guards, were themselves "negligent because they 'would have observed'" the wet floors that led to her injury in the course of their own duties, yet they failed to post warning signs. Id. at 307, 310. The Fourth Circuit concluded, "Given that the decision to engage [the custodial contractor] falls within the ambit of the discretionary function exception, we find that in this case Williams' assertions that the United States was negligent in inspecting and not posting warning signs cannot prevail because these decisions are embraced by the overarching decision to engage [the custodial contractor]." Id. at 310. Here too, inaction on the part of USACE employees, such as park rangers, in failing to inspect and maintain playgrounds is "embraced by the overarching decision to engage" FedServ. Id.

Just as the government's decision that its own employees were not required to monitor office building floors or post warning signs followed from the overarching decision to hire a custodial contractor in Williams, in this case, the government's decision that USACE employees are not required to initiate inspections and maintenance of playgrounds follows from the overarching decision to hire FedServ. USACE's inaction in the sphere of playground safety and USACE's delegation of playground safety tasks to FedServ are two sides of the same coin; USACE has the benefit of flexibility not to compel its own employees to inspect and repair playgrounds precisely because it has determined based on "concerns of expense, administration, payment, access to the Premises, and a veritable plethora of factors" that entrusting playground safety to an independent contractor is preferable. Williams, 50 F.3d at 310.

Applying both discretionary function factors to W.O.'s claims based on USACE's inaction demonstrates, first, that the SOP does not require USACE to take any particular course of action regarding playground inspection and upkeep because, instead, a comprehensive contract mandates that FedServ will handle these tasks, and, second, that this delegation is precisely the kind of policy judgment protected by the discretionary function exception. This court therefore lacks jurisdiction to consider W.O.'s allegations that USACE failed to assess the age of playground components, id. ¶ 25 c, to conduct regular inspections through its own employees, id. ¶ 25 d, to address predictable wear and tear, id. ¶ 25 e, and to encourage park rangers and other staff to inspect swing sets on their patrols, id. ¶ 25 f.

Nevertheless, the April 2023 Parker Inspection remains distinguishable. Determining whether a swing set is in safe condition based on signs such as "[b]ending, [w]arping, [r]usting, . . . [b]reakage" and "[d]eformation of [o]pen [h]ooks," Playground Inspection Checklist, ECF No. 10-1, requires the application of merely "technical considerations," not "social, economic, and political considerations," Van Orden v. United States, 85 F.3d 639, 1996 WL 256585 (Table), at *1 (9th Cir. May 15, 1996). Courts routinely recognize that such judgments about the safety or "structural[] sound[ness]" of installations on government property open to the public, like swing sets or trees in government-owned parks, "are not the kind of discretionary judgments that Congress intended to immunize" with the discretionary function exception. Walen, 246 F. Supp. 3d at 465; see also Bolt v. United States, 509 F.3d 1028, 1034 (9th Cir. 2007) ("[M]aintenance work is not the kind of regulatory activity to which the Supreme Court envisioned the discretionary function exception applying."); Fernandez v. United States, 496 F. App'x 704, 706 (9th Cir. 2012) (finding that "a decision regarding routine maintenance

20

and/or safety," such as tree removal, "generally do[es] not involve a policy weighing decision"); Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997) (holding that the discretionary function exception did not apply to the Navy's failure to provide safeguards on a footpath because it was a "mundane, administrative, garden-variety, housekeeping problem"). Thus, W.O.'s claims that Parker ignored "patent defects" when completing the Playground Inspection Checklist in April 2023, Compl., ECF No. 1, ¶ 25 a, and that this constituted negligence per se, id. ¶ 25 b, fall outside the discretionary function exception both because the Checklist prescribed a specific course of action and because its completion required technical, rather than policy, judgments as to whether playground components were in safe condition.

To summarize, although Parker's decision to initiate an inspection was discretionary, once Parker took affirmative steps to inspect the playground according to the nondiscretionary Playground Inspection Checklist, she stepped outside the realm of the discretionary function exception in making merely technical determinations as to how to comply with the steps set forth in the Checklist. The decisions challenged in the complaint concerning Parker's completion of the Checklist—for example, Parker's decision as to whether the swing set was in safe condition based on the state of its hooks—had nothing to do with USACE's decision to engage FedServ. Once Parker began the April 2023 inspection, there was no longer a protected policy judgment to be made about what entity is best suited to inspect playgrounds at the John Kerr Dam and Reservoir; the fact was that Parker was inspecting, so the only question was how she would conduct the inspection. Because that question was answered by the Playground Inspection Checklist and the technical safety judgments the Checklist requires

an inspector to make, W.O.'s claims based on the April 2023 Parker Inspection are not barred by the discretionary function exception. Compl., ECF No. 1, ¶¶ 25 a-b.

Accordingly, the motion to dismiss for lack of subject matter jurisdiction is **DENIED in part and GRANTED in part**. There is no jurisdictional impediment to the court considering claims based on the April 2023 Parker Inspection. Compl., ECF No. 1, ¶¶ 25 a-b. However, the discretionary function exception to the FTCA's waiver of sovereign immunity applies to W.O.'s claims based on USACE's alleged failure to perform tasks that USACE contractually delegated to FedServ, and accordingly, the court lacks jurisdiction to consider these claims. Id. ¶¶ 25 c, 25 d, 25 e, 25 f.

### b. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss for Failure to State a Claim

FTCA liability is "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the John Kerr Dam and Reservoir is in Virginia, the court must apply Virginia law in determining whether W.O. has stated a plausible claim based on the April 2023 Parker Inspection. A claim for negligence under Virginia law rests on the following elements: (1) "a legal duty on the part of the defendant," (2) "a breach of that duty," (3) "damage to the plaintiff," and (4) "a showing that such breach was the proximate cause of [the] injury." Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc., 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006). The duty at issue here is that owed by an owner of property to an invitee:

> (1) to use ordinary care to have the premises in a reasonably safe
> condition for the invitee's use consistent with the invitation, and
> (2) to use ordinary care to warn its invitee of any unsafe condition
> that was known, or by the use of ordinary care should have been

> known, to the owner; except that the owner has no duty to warn
> its invitee of an unsafe condition which is open and obvious to a
> reasonable person exercising ordinary care for his own safety.

AlBritton v. Commonwealth, 299 Va. 392, 405, 853 S.E.2d 512, 520 (2021); see also A.Z. by

Zilka v. United States, No. 23-1961, 2024 WL 4211620, at *1 (4th Cir. Sept. 17, 2024) (applying

the duty of care owed by a property owner to an invitee under Virginia law in a case under the

FTCA wherein the plaintiff was injured on government property).

In its motion to dismiss, the United States argues that W.O. has failed to allege that

USACE had knowledge of an unsafe condition, that USACE breached its duties owed to

W.O., that USACE's actions proximately caused W.O.'s alleged injury, or how any breach

resulted in the sum of damages claimed. Mem. Supp. Mot. Dismiss, ECF No. 9 at 16.

However, these arguments concern issues to be tested by the evidence. At the motion to

dismiss stage, W.O.'s complaint has done enough to state a plausible claim that USACE

breached its duty owed to invitees when, during the April 2023 Parker Inspection, a USACE

employee "overlooked and failed to address the visible and patent defects" that caused W.O.'s

injury. Compl., ECF No. 1, ¶ 25 a.

As to the United States' contention that W.O. has not alleged facts sufficient to show

that USACE had actual or constructive notice that the swing set was in unsafe condition, W.O.

has alleged that the S-hook was, at the time of the April 2023 Parker Inspection, already

"observably worn and thin at the point where the triangular bracket of the swing created

friction during swinging." Id. ¶ 12. Under Virginia law, "constructive knowledge or notice of

a defective condition of a premise or a fixture may be shown by evidence that the defect was

noticeable and had existed for a sufficient length of time to charge its possessor with notice

of its defective condition." <u>Grim v. Rahe, Inc.</u>, 246 Va. 239, 242, 434 S.E.2d 888, 890 (1993). Here, because it is at least plausible that the swing set's S-hook was already visibly deformed three or more months prior to W.O.'s injury, W.O. is entitled to the opportunity to develop such "evidence" of constructive notice. <u>Id.</u>[4] Indeed, the very cases cited by the United States demonstrate that constructive notice is frequently an issue for resolution with aid of evidence at summary judgment or at trial, not an appropriate vehicle for dismissal at the Rule 12(b)(6) stage. <u>See</u>, <u>e.g.</u>, <u>Sedar v. Reston Town Ctr. Prop., LLC</u>, 988 F.3d 756, 764 (4th Cir. 2021) (finding a genuine issue of material fact precluding summary judgment existed as to whether loose bricks had existed for a significant time prior to the plaintiff's fall, thus providing the defendant property owner with constructive notice).

Furthermore, the constructive notice W.O. alleges suffices to plausibly ground the breach element of negligence. If indeed the S-hook was in an observably unsafe condition, then it is certainly plausible that when a USACE employee reported on the Playground Inspection Checklist that the swing set, including its hooks and other components, was in safe condition in April 2023, USACE thereby breached its duty to use ordinary care to keep its playgrounds in a reasonably safe condition for their expected use by children. Compl., ECF No. 1, ¶¶ 9, 25 a.

---

[4] Constructive notice is "usually, if not always, established by circumstantial evidence." <u>Jarmak v. Ramos</u>, 497 F. App'x 289, 293 (4th Cir. 2012) (citing <u>Appalachian Power Co. v. Sanders</u>, 232 Va. 189, 195, 349 S.E.2d 101, 105 (1986) ("Necessarily, constructive knowledge must be shown by circumstantial evidence.")). At this stage, it is enough that W.O. has pointed to such circumstantial evidence by alleging that USACE's investigation following W.O.'s accident revealed that "the swing set had old, worn, defective equipment including a worn S-hook fastener, the metal of which had become visibly thin at its natural friction point." Compl., ECF No. 1, ¶ 19. Discovery is needed to attempt to pinpoint when such a defective condition would have become visible, whether it was "visibly thin" as of a week, a month, or years prior to W.O.'s accident. <u>Id.</u>

Regarding proximate cause, W.O. may encounter proof problems at later stages in this litigation, particularly in light of the evidence in the record on Rule 12(b)(1) indicating that FedServ inspected the swing set in question after the USACE inspection and just nine days prior to W.O.'s accident. Declaration of Tasha Alexander, ECF No. 10-3, ¶ 7. However, such evidence cannot be considered in evaluating the Rule 12(b)(6) motion. Anand, 754 F.3d at 198 (explaining that courts do not consider extrinsic evidence in evaluating a Rule 12(b)(6) motion to dismiss). Because W.O. has plausibly alleged a causal connection between the April 2023 Parker Inspection, which failed to note the damaged S-hook and call for a repair, and W.O.'s injury, dismissal at this stage would be inappropriate, and the causation issues in this case, like the notice issues, will be better assessed with the aid of evidence. See Buchanan v. Santek Envtl. of Va., LLC, No. 1:21-cv-006, 2021 WL 1866945, at *2-3 (W.D. Va. May 10, 2021) (denying a motion to dismiss that was based on failure to allege proximate cause and noting that "[p]roximate cause is 'ordinarily [a] question[] of fact for the jury's determination.'" (quoting Dorman v. State Indus., Inc., 292 Va. 111, 122, 787 S.E.2d 132, 138 (2016))).

Finally, W.O. has plausibly alleged damages. The complaint alleges that "W.O. suffered injuries and searing pain to his body that required emergency and subsequent medical treatment, including immobilization, emergency surgery on or about July 27, 2023 to repair a displaced fracture of his right middle finger, followed by casting and physical therapy." Compl., ECF No. 1, ¶ 17. The complaint is not deficient simply because it lacks a precise calculation accounting for the $200,000 sought. Id. at Relief Requested; see SunTrust Mortg., Inc. v. K. Hovnanian Am. Mortg., LLC, No. 3:12-cv-317, 2012 WL 13029758, at *1 (E.D. Va. July 9, 2012) ("Whether [the plaintiff] has proven these damages . . . is a question . . . properly

reserved until after the parties have engaged in adequate discovery and filed motions for summary judgment.").

Because W.O. has plausibly alleged negligence under Virginia law based on the April 2023 Parker Inspection, the motion to dismiss for failure to state a claim is **DENIED**.

## CONCLUSION

Thus, the United States' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is **DENIED in part** as to W.O.'s claims based on the April 2023 Parker Inspection and **GRANTED in part** as to W.O.'s claims based on USACE's failure to perform the tasks USACE contractually assigned to FedServ. The United States' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is **DENIED**. This case will proceed based on W.O.'s claim that an employee of the United States caused W.O.'s injury by negligently inspecting the swing set on which W.O. was injured because that claim falls within the FTCA's waiver of sovereign immunity and satisfies the elements of negligence under Virginia law.

An appropriate order will be entered.

Entered: *Apr 1 3, 2025*

Michael F. Urbanski
Senior United States District Judge